E-FILED
Thursday, 28 May, 2026  10:40:30 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **VIHESH PAUL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 25-CV-2027** |
| ) | |
| **JOSEPH B. EDLOW, Director, U.S.** ) | |
| **Citizenship and Immigration Services,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>ORDER</u>

Plaintiff, Dr. Vihesh Paul, filed an Amended Complaint (#6) on June 18, 2025, seeking to set aside the decision of Defendant, Joseph B. Edlow[1], Director of the U.S. Citizenship and Immigration Services ("USCIS").  Plaintiff alleges that Defendant's decision to deny Plaintiff an "extraordinary ability" visa ("EB-1 visa") was "arbitrary and capricious," in violation of the Administrative Procedures Act ("APA") (5 U.S.C. § 701, et seq.).  Plaintiff filed his Motion for Summary Judgment (#11) on October 30, 2025, to which Defendant filed its own Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (#16) on January 5, 2026.  Plaintiff filed his Response to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (#17) on January 15, 2026, and Defendant filed its Reply (#18) brief on January 29, 2026.  The Motions are now fully briefed and ready for the court's decision.

---

[1]The clerk is directed to substitute Joseph B. Edlow for Jennifer B. Higgins as Defendant in this case.  Edlow became Director of USCIS on July 18, 2025, succeeding Higgins, who had been Acting Director.  Even though Director Edlow is the named Defendant, for purposes of this Order the court will consider the agency, USCIS, as the Defendant.

BACKGROUND

The following background facts are taken from the parties' Statements of Undisputed Material Facts, Defendant's administrative decision of May 27, 2025,denying Plaintiff's request for an extraordinary ability visa ("the Decision"), and the record evidence submitted by Plaintiff to Defendant in the administrative proceeding.  The court will only consider those facts properly before it.

*Plaintiff's Application*

On August 12, 2024, Plaintiff filed an I-140 Immigrant Petition for Alien Worker as a "self-petitioner" seeking to classify as an "alien of extraordinary ability" pursuant to 8 U.S.C. § 1153(b)(1)(A), in the field of pulmonary medicine.  In his petition submitted to Defendant, Plaintiff asserted that he met the following five criteria under 8 C.F.R. § 204.5(h)(3):

> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media; [and]
>
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation[.]

In support of his petition, Plaintiff submitted the following evidence:

Since 2014, he has worked as a physician specializing in Pulmonary and Critical Care Medicine at Carle Foundation Hospital in Urbana, Illinois.

Carle was recognized as one of America's 50 best hospitals for eight consecutive years, from 2016 to 2023, by Healthgrades, which is "the leading marketplace connecting doctors and patients." This placed Carle in the top 1% "of hospitals nationwide for overall clinical performance." Carle was recognized as one of "America's 100 Best Hospitals for Pulmonary Care" for three consecutive years, between 2021 and 2023. Carle received a Five-Star Distinction award in the following treatment areas: coronary intervention procedures, heart attack, heart failure, stroke, COPD, pneumonia, upper gastrointestinal surgeries, gastrointestinal bleeds, sepsis, pulmonary embolism, and respiratory failure.

In 2015, Plaintiff developed the pulmonary curriculum for the "first-of-its-kind" Carle Illinois College of Medicine ("CICOM"). CICOM is "the first engineering-based college of medicine nationally and internationally." Dr. Mark Cohen, CICOM's Dean, credited Plaintiff with contributing to the development of the pulmonary medicine curriculum at CICOM. Dr. Cohen relied on Plaintiff's experience "to create an accreditable curriculum to teach our future physicians medicine through engineering principles." Dr. Cohen stressed the significance of Plaintiff's specialized knowledge, and "what it means to have an expert like [Plaintiff] write a medical curriculum for the first (ever) engineering-based college of medicine in the world." Dr. Cohen explained

3

that adding an engineering aspect to medical curricula filled in a gap in the traditional educational model, thereby providing future physicians with the skills and resources necessary to adapt to the inevitable changes coming in the field of medical technology, and to develop novel treatments for patients with unmet needs.

Dr. Sinisa Stanic, a Clinical Assistant Professor at CICOM, submitted a letter verifying her firsthand knowledge of Plaintiff's achievements, stating that his leadership resulted in the creation of a "navigational model" for cancer patients that had improved the outcomes for patients by reducing the time between diagnosis and treatment intervention.

Plaintiff presented evidence showing CICOM now belonged to a global consortium with more than 40 medical schools on six continents.

Plaintiff submitted evidence showing he had helped create an original treatment for COVID-19 (the "proning protocol") that was published in a 2020 *Journal of Intensive Care Medicine* paper titled: "Proning in non-intubated (PINI) in times of COVID-19: case series and a review." Plaintiff's article was published by the World Health Organization ("WHO") under "Global literature on coronavirus disease[.]"

Plaintiff also submitted the "Altmetric" scores for his paper. Plaintiff claims that, unlike traditional citation counts, Altmetric scores provide real-time insights into how research is being used, shared, and discussed outside of academic circles, helping to gauge broader public support and impact. Plaintiff's work has been cited 120 times since 2020 by researchers from around the world.

The CEO of Carle, Dr. James Leonard, submitted a testimonial letter, which detailed Plaintiff's critical and leading roles at Carle.  Dr. Leonard stated that Plaintiff received "wide recognition ... for his groundbreaking work in COVID-19 proning treatment."

Dr. Nirmal Sharma, Assistant Professor at Harvard Medical School and the Medical Director of the Lung Transplantation Program at Harvard's affiliated Brigham and Women's Hospital, submitted a testimonial letter dated March 24, 2025, that described, in her opinion, Plaintiff's innovative and "game-changing" treatment for COVID-19.  According to Dr. Sharma, Plaintiff "developed the protocol for 'proning non-intubated COVID-19 patients' to help improve oxygen levels, which could potentially prevent intubation."

Dr. Sharma explained that Plaintiff's published "paper at the beginning of the COVID-19 pandemic in the Spring of 2020 was extremely vital work, and it still holds relevance in patients in the early stages of respiratory failure.  His work proposed an innovative yet straightforward treatment option of proning non-intubated patients with COVID-19 to enhance oxygenation and reduce the need for mechanical ventilation."  According to Dr. Sharma, Plaintiff's work "was instrumental in helping COVID-19 patients by reducing the need for ventilators and significantly improving patient outcomes."

5

Having developed protocols himself, Dr. Sharma stated that establishing such procedures "often does not lead to extensive publications and citations," and Plaintiff's "findings and their implementation" significantly impacted the treatment of COVID-19. Dr. Sharma stated that Plaintiff "provided crucial guidance at a time when minimal data was available, significantly impacting the lives of COVID-19 patients."  Dr. Sharma confirmed that Plaintiff's "contribution significantly impacted scientific medicine, informed other medical researchers, and influenced healthcare systems involved in treating COVID-19 patients during a global pandemic."

Dr. Danish Thameem, Director of Pulmonary Medicine at Christie Clinic in Champaign, Illinois, stated that Plaintiff's innovative protocol to treat COVID-19 patients received national and international attention and saved many lives throughout the United States.

Plaintiff also documented his membership in various organizations, including the American College of Chest Physicians ("ACCP"), also known as "CHEST."[2]  The ACCP is the foremost professional association supporting advancements in the field of pulmonary and critical care medicine with over 22,000 members worldwide.

In 2016, the ACCP named Plaintiff a Distinguished Fellow.  To be eligible, Plaintiff had to show he was board-certified in Critical Care and Pulmonary Medicine, had at least two years of work experience, proven clinical excellence, service in leadership positions, and proven extraordinary academic work.  A committee

---

[2]Plaintiff uses "ACCP" and "CHEST" interchangeably.

comprising some of the field's leading experts elect fewer than 50 fellows annually after a rigorous review of a large number of applications from around the world. In 2020, the ACCP asked Plaintiff to present his work at the CHEST annual conference. At the 2024 CHEST conference, Plaintiff moderated four separate panels on new advancements in extracorporeal membrane oxygenation. CHEST receives approximately 5,000 requests to present at its annual conference. Between 2014 and 2020, CHEST invited Plaintiff to participate in ten panels on various pulmonary and critical care issues and advancements.

*Defendant's Initial Assessment of Plaintiff's Petition*

Defendant initially concluded that Plaintiff satisfied two of the § 204.5(h)(3) criteria: (1) he had judged the work of others and (2) he had authored scholarly articles in the field. Defendant issued Plaintiff a Request for Evidence ("RFE"), requesting Plaintiff submit more evidence demonstrating that he satisfied the requirements to merit classification as a person of extraordinary ability. Defendant's RFE explained why Plaintiff's submitted evidence was insufficient to satisfy a minimum of three evidentiary categories.

On November 13, 2024, Plaintiff responded to the RFE and provided additional documentation and evidence as part of his response. Plaintiff submitted additional letters of support, arguing the letters were further evidence demonstrating that he had made an original contribution of major significance and performed multiple leading and critical roles at Carle and CICOM. On December 5, 2024, Defendant issued a notice

7

of decision, finding that, while Plaintiff satisfied two evidentiary categories for judging the work of others and authoring scholarly work in the field, Plaintiff had failed to establish by a preponderance of the evidence that he met a third criteria enumerated under 8 C.F.R. § 204.5(h)(3)(i)-(x). Because Plaintiff failed to satisfy three categories of evidence, a final merits determination was not conducted.

Following Plaintiff's filing of the instant civil case, Defendant reopened the administrative proceedings on its own motion. On March 11, 2025, Defendant issued a Notice of Intent to Deny ("NOID"). The NOID largely repeated the reasons provided in the initial denial, finding that Plaintiff had satisfied only two categories of evidence. But the NOID also stated that Defendant intended to deny the petition because it did not show that Plaintiff was a person of extraordinary ability. Defendant also invited Plaintiff to submit additional evidence showing he merited classification as a person of extraordinary ability.

On April 9, 2025, Plaintiff filed his NOID response, which included additional letters of support from Dr. Leonard, Dr. Sharma, and Dr. Thameem. Plaintiff again sought to show that he had an original contribution of major significance, and that he had a leading or critical role in an organization having a distinguished reputation. In response to the NOID, Plaintiff also sought to show that he met the overall standard of extraordinary ability.

*The Decision*

On May 27, 2025, Defendant issued the Decision denying Plaintiff's petition.  The Decision started by noting that Plaintiff sought to classify himself as an alien of extraordinary ability, and quoted the statutory and regulatory definitions of "extraordinary ability."  The Decision then recounted the history of Plaintiff's attempt to obtain an extraordinary ability visa, and quoted 8 C.F.R. § 204.5(h)(3), including the "ten criteria, at least three of which must be satisfied for an individual to establish the sustained acclaim necessary to qualify as an individual of extraordinary ability."  The Decision then states:

> In reviewing this petition, USCIS will first consider the evidence in relation to the plain language of the above criteria.  If the individual has received a one-time achievement (a major internationally recognized award) or meets at least three criteria, USCIS will then consider the evidence in the context of a final merits determination.  However, the fact that an individual meets the minimum requirement of providing required initial evidence does not, in itself, establish that the individual is one of the small percentage who have risen to the very top of the field of endeavor, and that the self-petitioner has sustained national or international acclaim in the field.

Because the evidence did not show that Plaintiff had "received a major, internationally recognized prize or award[,]" the evidence had to "demonstrate that [Plaintiff] [had] fulfilled at least three of the ten criteria listed in the regulations."  The Decision then evaluated Plaintiff's petition under the five criteria for which he submitted evidence.  Defendant found that Plaintiff had satisfied the following criteria:

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification

is sought; (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media; and (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation.  However, Defendant found that Plaintiff's documentation failed to satisfy the other two criteria he applied under: (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or field; and (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field.

Defendant quickly dispensed with Plaintiff's failure to satisfy criterion two, concluding that the "evidence does not show that the basis for granting memberships in the submitted associations was [Plaintiff's] outstanding achievements in the field of endeavor as judged by recognized national or international experts in the field."  The Decision stated that Defendant reviewed the record, including the letter from the past-president of the ACCP.  "While the letter explained [Plaintiff] was granted the Fellow title in 2016 based on his academic accomplishments and contribution towards advancing the field, the evidence did not explain how the association requires 'outstanding achievements of their members as judged by recognized national or international experts in their disciplines or fields.'"  Thus, Defendant found, "[r]equirements that only include employment or activity in a given field; minimum

10

education, experience, or achievement; recommendations by colleagues or current members; or payment of dues do not satisfy this criterion, because these requirements do not constitute outstanding achievements." Because Plaintiff did not submit any new evidence in his NOID response to establish this criterion, Defendant found he did not meet it.

The Decision's analysis of Plaintiff's failure to meet criterion five, in which he was obligated to provide evidence of his "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field[,]" was much more detailed. The Decision stated that Defendant considered the following evidence in evaluating whether Plaintiff satisfied criterion five: "Several letters of recommendation from peers and colleagues," including the letters of Drs. Thameem and Stanic; publication and citation records; copies of emails requesting materials; and evidence of conference participation including poster presentations.

Defendant began the analysis by noting that Plaintiff "submitted several letters of recommendation from those named above, as well as other colleagues, that do not illustrate how [Plaintiff's] contributions are both original and of major significance in the overall field." Defendant conceded that, while many of the submitted letters indicate Plaintiff's "work has benefitted his direct employer, Carle Foundation Hospital, there is no evidence of record indicating that his work has been put to use in the greater field as a whole." Defendant further noted that "the submission of solicited letters supporting the petition is not presumptive evidence of eligibility[,]" as "[e]vidence in

11

existence prior to the preparation of the petition carries greater weight than new materials prepared especially for submission with the petition, and an individual with sustained national or international acclaim should be able to produce unsolicited materials reflecting that acclaim."

Defendant next found that Plaintiff's articles and citation rates did not establish "contributions of major significance to the field."  While Defendant acknowledged Plaintiff "has coauthored several papers in his field and has accumulated a citation number of roughly 345 cites at the time of the original denial and according to Google scholar, 358 citations as of today[,]" Defendant found that "number is significantly reduced when citations by [Plaintiff], his coauthors, and other members of [Plaintiff's] research circle are removed."  Defendant continued, "[s]elf-citation or citation by other members of the research group does not establish that the contributions of his articles have been of such major significance that they are being discussed, researched and referenced by the field as a whole."  Defendant also unfavorably compared Plaintiff's publication and citation records "to individuals such as those who [Plaintiff] considers the top of his field," noting Plaintiff's citations were "substantially smaller in number and influence."

Finally, concerning Plaintiff's materials related to his conference participation, Defendant stated that the evidence fell "short of establishing contributions of major significance in the field[,]" as the record did "not contain any evidence to suggest [Plaintiff's] participation and presentation garnered such support that it has elevated

12

the appearance above other presentations in the same field." Thus, based on the relevant documents in the record, Plaintiff had "not shown, by a preponderance of the evidence, that he has made original contributions of major significance in the field."

Despite not meeting criterion five, Plaintiff had met at least three of the ten § 204.5(h)(3) criteria, thereby advancing Plaintiff's petition to a final merits analysis. Here, Defendant "conducted a final merits determination that considers all of evidence in the context of whether or not the self-petitioner has demonstrated a 'level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor,' that the individual 'has sustained national or international acclaim, and that his or her achievements have been recognized in the field of expertise.'"

The Decision noted that meeting the "minimum regulatory criteria outlined above, alone, will not establish eligibility for the E11[3] immigrant classification." "Establishing eligibility for the high level of expertise required for the E11 immigrant classification is based on the self-petitioner possessing:" (1) Sustained national or international acclaim, meaning that an applicant who has enjoyed "sustained" national or international acclaim must "maintain" that acclaim, as a "self-petitioner may have

---

[3]"E11" is another name for the EB-1 visa. See *USCIS Issues New Guidance on EB-1 Eligibility Criteria for Individuals with Extraordinary Ability*, https://www.uscis.gov/newsroom/alerts/uscis-issues-new-guidance-on-eb-1-eligibility-criteria-for-individuals-with-extraordinary-ability (last visited May 12, 2026) ("U.S. Citizenship and Immigration Services is issuing policy guidance in our Policy Manual to further clarify the types of evidence that we may evaluate to determine eligibility for extraordinary ability (E11) EB-1 immigrant visa classifications.").

achieved extraordinary ability in the past but then failed to maintain a comparable level of acclaim thereafter;" and (2) "Achievements that have been recognized in the field of expertise, indicating that the self-petitioner is one of that small percentage who has risen to the very top of the field of endeavor."

Turning to the merits of Plaintiff's petition, Defendant stated that a "review of the record in the aggregate supports a finding that [Plaintiff] has not established the level of expertise required for the classification sought."  While Plaintiff had "submitted evidence regarding five (5) of the 10 regulatory criteria and met three (3) of such criteria as outlined above, the evidence does not sufficiently demonstrate that he is in the small percentage at the top of the field or show the sustained national or international acclaim required for this highly restrictive classification.  Nor does the record include extensive documentation showing recognition of [Plaintiff's] achievements in the field."

"After a review of all of the evidence," Defendant concluded that "the record does not show that [Plaintiff's] work is significant and indicative of someone who stands apart from others in his field[,]" as it did not indicate "that his work attracted an unusually high level of interest in the field and significant attention beyond the entities with which he is affiliated and the individuals to whom he provided his services." Defendant cited to the absence of evidence that Plaintiff's "professional activities in the field were widely implemented throughout the field, such that he derived sustained national or international acclaim."

At issue for Defendant was whether Plaintiff "made an impact at a level consistent with being one of the small percentage at the very top of the field." Unfortunately for Plaintiff, "[n]othing in the record credits [Plaintiff] with any specific achievement or innovation which garnered him any sustained national or international acclaim." While the letters submitted on his behalf reflected that Plaintiff "is talented and respected, and has enjoyed a successful career[,]" "the writers do not provide specific, detailed information to establish the significance of his work [that] is indicative of the required sustained national or international acclaim, consistent with a career of acclaimed work in the field as contemplated by Congress."

Turning to the letters submitted on Plaintiff's behalf, Defendant noted that while it may, in its discretion, use as advisory opinion statements submitted as expert testimony, the "submission of letters from experts supporting the petition is not presumptive evidence of eligibility." While it "may evaluate the content of the letters as to whether they support the individual's eligibility[,]" Defendant "may give less weight to an opinion that is not corroborated, in accord with other information or is in any way questionable." Defendant also stated that "merely repeating the language of the statute or regulations does not satisfy [Plaintiff's] burden of proof."

Here, Defendant wrote, "the record contains a number of unsupported assertions in the form of the letters of support and attorney of record letters." Defendant further held that "[g]oing on record without supporting evidence is insufficient to show the [Plaintiff] meets this criterion[,]" and that the "assertions of counsel do not constitute

15

evidence."  "Simply put, the record falls short of showing [Plaintiff's] work is significant and indicative of someone who stands apart from others in his field, and that he attracted significant attention in the field."  Defendant conceded that the "record speaks to the potential applications of his work and professional activities[,] [h]owever, the record does not include extensive documentation showing his professional achievements have already been recognized in the field of expertise, and that he already reached a level of expertise indicating that he is one of that small percentage who have risen to the very top of the field of endeavor."

Defendant concluded the Decision by reminding Plaintiff that the visa he seeks is "a highly restrictive visa classification, intended for individuals already at the top of their respective fields, rather than for those progressing toward the top[,]" and that "USCIS has long held that even athletes performing at the major league level do not automatically meet the extraordinary ability standard."  Here, "[a]fter an evaluation of all of the evidence, the record does not establish that [Plaintiff] is an individual of extraordinary ability in accordance with Section 203(b)(1)(A)(i) of the INA [Immigration and Nationality Act]."

In this case, Defendant found, Plaintiff did not establish that he "satisfied each adjudicative element to establish eligibility for the requested benefit.  Therefore, the final merits determination independently forms the basis for this denial and USCIS does not find [Plaintiff] to be an individual of extraordinary ability."  "After a careful review and analysis of all evidence within the record," Defendant concluded Plaintiff had not

established eligibility for the benefit sought and, as a result, denied his Form I-140 petition.

*Plaintiff's Claims*

Plaintiff's Amended Complaint[4] contains two counts.  Count I alleges that Defendant's Decision "arbitrarily, capriciously, and unlawfully ignored inconvenient facts and relevant evidence" in violation of § 706(2)(A) of the APA.  Count II alleges that Defendant's "final merits analysis lacked reasoned consideration of the actual evidence."  Plaintiff requests that the court set side the Decision as arbitrary, capricious, and not in accordance with the law, and declare "Plaintiff eligible for classification as a first preference employment-based immigrant of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A)."

ANALYSIS

Plaintiff argues that summary judgment should be granted in his favor because: (1) Defendant overlooked "obvious facts and selectively parsed the evidence showing [Plaintiff] made one or more original contributions of major significance" and (2) Defendant "arbitrarily and capriciously offered nothing more than a boilerplate assessment of the evidence after finding [Plaintiff] provided initial evidence of his extraordinary ability."

---

[4]Plaintiff's original Complaint (#1) in this court was filed January 30, 2025. Following the issuance of the Decision on May 27, 2025, Plaintiff filed the instant Amended Complaint on June 18, 2025.

In response to Plaintiff and in support of its own Motion for Summary Judgment, Defendant argues that summary judgment should be entered in its favor because it rationally found Plaintiff did not establish eligibility for an extraordinary ability visa. Specifically, Defendant argues it: (1) did not act arbitrarily and capriciously in determining that Plaintiff did not meet the fifth criterion of "contributions of major significance in the field" and (2) it reasonably determined that Plaintiff was "not a physician/scientist of extraordinary ability in the field of pulmonary medicine based on the evidence."

*Summary Judgment Standard*

This is not a typical summary judgment motion, as the court is being asked to review an agency decision under the APA. "Under the APA, courts set aside agency action 'only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with the law.'" *Viswanadha v. Mayorkas*, 660 F.Supp.3d 759, 767 (S.D. Ind. 2023), quoting *Little Company of Mary Hospital v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009); see 5 U.S.C. § 706(2). The "arbitrary and capricious" and "substantial evidence" standards "overlap." *Viswanadha*, 660 F.Supp.3d at 767, citing *Orchard Hill Building Co. v. United States Army Corps of Engineers*, 893 F.3d 1017, 1024 (7th Cir. 2018). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Federal Communications Commission v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

"Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Prometheus Radio Project*, 592 U.S. at 423.

"When reviewing whether an action is arbitrary and capricious, the Court 'ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.'" *Viswanadha*, 660 F.Supp.3d at 767, quoting *Prometheus Radio Project*, 592 U.S. at 423; see also *Zero Zone, Inc. v. U.S. Department of Energy*, 832 F.3d 654, 668 (7th Cir. 2016) (explaining that a decision is arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise"). "A determination is unsupported by substantial evidence when the record lacks evidence that a reasonable mind might accept as adequate to support the conclusion." *Orchard Hill Building Co.*, 893 F.3d at 1024 (cleaned up). "Under both standards, 'the scope of review is narrow and a court must not substitute its judgment for that of the agency.'" *Viswanadha*, 660 F.Supp.3d at 767, quoting *Orchard Hill Building Co.*, 893 F.3d at 1024 (citations omitted). "Furthermore, when conducting its review, the district court is 'confined to the administrative record[.]'" *Viswanadha*, 660 F.Supp.3d at 767, quoting *Little Company of Mary Hospital*, 587 F.3d at 856.

"APA cases are often resolved at summary judgment because whether an agency's decision is arbitrary and capricious is a legal question that the court can usually resolve on the agency record." *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir.

19

2022). "Rather than determining whether there is a genuine dispute of material fact as in a typical summary judgment case, in cases involving review of a final agency action under the APA, summary judgment instead serves as a mechanism for deciding, as a matter of law, whether the agency action is consistent with the APA standard of review." *Viswanadha*, 660 F.Supp.3d at 767 (cleaned up). "So, to survive summary judgment under the APA, the plaintiffs must point to facts or factual failings in the administrative record that indicate that the agency's decision is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law." *Viswanadha*, 660 F.Supp.3d at 767-68 (cleaned up). Accordingly, unless the court can conclude that no rational actor would have denied Plaintiff's petition, it must not disturb Defendant's Decision. See *Jafarov v. United States Citizenship and Immigration Services*, 2024 WL 69056, at *4 (S.D.N.Y. Jan. 5, 2024).

*Analysis*

EB-1 Visas in General

Plaintiff is challenging the denial of a visa. "More specific standards govern visa-petition proceedings[,]" under which the "petitioner bears the burden of establishing eligibility for the benefit sought by a preponderance of the evidence." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024), citing 8 U.S.C. § 1361.

"Pursuant to 8 U.S.C. § 1153(b)(1)(A), aliens may apply for a visa on the basis of 'extraordinary ability.'" *Kazarian v. United States Citizenship and Immigration Services*, 596 F.3d 1115, 1119 (9th Cir. 2010). That visa, also known as an EB-1 visa, "is the most

difficult type of employment visa to obtain." *Joseph v. Director of Texas Service Center, United States Citizenship and Immigration Services*, 2025 WL 458001, at *1 (5th Cir. Feb. 11, 2025).[5]  "The extraordinary ability visa is an 'extremely restrictive' route for foreign nationals at the top of their professions to obtain permanent residence in the United States."  *Hamal v. United States Department of Homeland Security*, 2023 WL 1156801, at *1 (D.C. Cir. Jan. 31, 2023), citing *Kazarian*, 596 F.3d at 1117-22.  "Those with extraordinary ability are rare, which means this exception is 'extremely restrictive'—indeed it is colloquially referred to as the 'Einstein' or 'genius' visa."  *Joseph*, 2025 WL 458001, at *1, citing *Amin*, 24 F.4th at 386-87, and *Kazarian*, 596 F.3d at 1120.  "This narrow definition reflects the stringency of the 'extraordinary ability standard[,]" as "a different visa is available to those whose ability is merely 'exceptional.'"  *Amin*, 24 F.4th at 387, citing 8 U.S.C. § 1153(b)(2).[6]

---

[5]Indeed, the Fifth Circuit noted that "[w]e have not found a single circuit court opinion reversing USCIS's denial of an EB-1 visa."  *Joseph*, 2025 WL 458001, at *1 n.1. The restrictive nature of the EB-1 visa was further recognized by the Ninth Circuit in *Kazarian*: "The scant caselaw indicates that '[t]he regulations regarding this preference classification are extremely restrictive.'"  *Kazarian*, 596 F.3d at 1120, quoting *Lee v. Ziglar*, 237 F.Supp.2d 914, 918 (N.D. Ill. 2002) (finding that "arguably one of the most famous baseball players in Korean history" did not qualify for the visa as a baseball coach for the Chicago White Sox because his acclaim was limited to his skills as a player and not as a coach).

[6]The court would note that, per Defendant, Plaintiff has been granted an "exceptional ability" visa (also known as an "EB-2a" visa).  EB-2 visas are "employment-based visas issued to noncitizens 'who are members of the professions holding advanced degrees or aliens of exceptional ability.'"  *Kanapuram v. Jaddou*, 2023 WL 5655876, at *1 (N.D. Ga. Aug. 22, 2023), quoting 8 U.S.C. § 1153(b)(2).  While an employee attempting to qualify for an EB-2 visa may make a lesser showing of ability than one attempting to qualify for an EB-1 visa, the process is more time consuming, see *Kazarian*, 596 F.3d at 1120, hence Defendant's claim that Plaintiff "apparently" did not

21

"To qualify, one cannot merely excel in his or her field[,]" but rather must demonstrate "'sustained national or international acclaim.'" *Joseph*, 2025 WL 458001, at *1, quoting 8 U.S.C. § 1153(b)(1)(A)(i).  "An alien can prove an extraordinary ability in one of two ways. The first is 'evidence of a one-time achievement (that is, a major, international recognized award).'" *Kazarian*, 596 F.3d at 1119, quoting 8 C.F.R. § 204.5(h)(3).  "Receipt of the Nobel Prize is the quintessential example of a major award."  *Kazarian*, 596 F.3d at 1119, citing H.R. Rep. No. 101–723(I & II) (1990), reprinted in 1990 U.S.C.C.A.N. 6710, 6739.  Nothing in the record indicates Plaintiff has won such a prize.

The second way to prove extraordinary ability is to provide evidence of at least three of the ten criteria listed in 8 C.F.R. § 204.5(h)(3).  *Kazarian*, 596 F.3d at 1119, citing 8 C.F.R. § 204.5(h)(3).

"If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a 'level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor,' 8 C.F.R. § 204.5(h)(2), and 'that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.'" *Kazarian*, 596 F.3d at 1119-20, quoting 8 C.F.R. § 204.5(h)(3).

USCIS utilizes this second way to prove extraordinary ability as a "two-step approach to adjudicating EB-1 visas."  *Joseph*, 2025 WL 458001, at *2.  "First, USCIS

---

want to wait "for an EB-2 immigrant visa to become available to him."

22

assesses the submitted evidence to establish which, if any, of the ten criteria are met by a preponderance of the evidence." *Joseph*, 2025 WL 458001, at *2. "Second," if three or more of the ten criteria are met, "USCIS conducts a final merits determination to decide whether the totality of the evidence is sufficient to demonstrate the 'required high level of expertise.'" *Joseph*, 2025 WL 458001, at *2.

"Those who have received the 'extraordinary ability' visa include John Lennon, a member of the internationally-known Beatles, who had support letters from other renowned individuals including Andy Warhol." *Joseph*, 2025 WL 458001, at *1, citing *Amin*, 24 F.4th at 386. "Another recipient was a golfer who won the World Series of Golf, Canadian Open, ranked tenth in the PGA Tour, made $714,389 in 1991 alone, and provided extensive major media coverage of his accomplishments as well as letters of support from other celebrated golfers including Jack Nicklaus." *Joseph*, 2025 WL 458001, at *1, citing *Matter of Price*, 20 I. & N. Dec. 953, 955–56 (BIA 1994). "Winning an Olympic Gold Medal or receiving an acclaimed prize like the Nobel Peace Prize or the Pulitzer Prize can also qualify an individual for this visa." *Joseph*, 2025 WL 458001, at *1.

The First Step: Whether Plaintiff Has Satisfied Three of the Five Criteria

The court must first consider Defendant's determination of how many of the ten regulatory criteria apply to Plaintiff.[7] The parties agree that Plaintiff's evidence satisfies three criteria: judging the work of others (criterion four), authorship of scholarly articles

---

[7] Because Defendant determined Plaintiff proved three of the criteria, it proceeded to the final merits determination. Still, the court reviews Defendant's step one analysis because if Plaintiff satisfies a fourth regulatory criterion, he has a stronger overall case for extraordinary ability at the second step. See *Amin*, 24 F.4th at 393 n.7.

in the field (criterion six), and leadership in distinguished industry organizations (criterion eight). Plaintiff objects to Defendant's determination that he did not prove criterion five concerning his original scientific contributions of major significance in the field, i.e., Plaintiff's protocol for proning non-intubated COVID-19 patients.

Criterion five requires Plaintiff to produce evidence of his original scientific or scholarly contributions of major significance in the field. 8 C.F.R. § 204.5(h)(3)(v). Put differently, that means the petitioner "fundamentally changed or significantly advanced the field as a whole." *Karim v. Allen*, 2023 WL 4624896, at *7 (D. Colo. July 19, 2023). Evidence can come in the form of letters submitted by peers/experts attesting to the petitioner's contributions to the field. See *Kazarian*, 596 F.3d at 1122; *Viswanadha*, 660 F.Supp.3d at 775-76.

Here, Plaintiff argues that Defendant erred by stating "there is no evidence of record indicating that his work has been put to use as a whole" in the field of pulmonary medicine. Specifically, Plaintiff argues that Defendant: (1) ignored the significance of Plaintiff's development of the engineering-based curriculum at CICOM; (2) ignored the record evidence that Plaintiff's proning protocol had been put to use in the field, including the WHO publication, publication in "other scholarly journals," Altmetric scores, citation records, invitations to speak at scholarly conferences, and the other letters; (3) improperly discounted the letters in support because the authors were colleagues who knew Plaintiff; and, most significantly, (4) ignored Dr. Sharma's letter regarding the proning protocol.

24

First, regarding Plaintiff's role in the development of an engineering-based curriculum at CICOM, the court finds Plaintiff's arguments unavailing. Defendant, in its Motion for Summary Judgment and Response (#16), notes that "Plaintiff submitted the curriculum evidence to show Plaintiff's critical role in an organization with a distinguished reputation, not as an original contribution of major significance in the field. And indeed, that criterion was met. Plaintiff cannot argue for the first time to this court that the evidence supports a different criterion instead."

Plaintiff, in his Response to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (#17), does not respond to this argument, and therefore has waived it. "A reply brief also can waive an argument by failing to respond to the opposing party's counterarguments or new arguments raised in the response brief." See *Equal Employment Opportunity Commission v. Wal-Mart Stores, Inc.*, 798 F.Supp.3d 879, 900 n.6 (C.D. Ill. 2025), citing *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive a non-jurisdictional issue or argument in many ways, such as by ... failing to respond in a reply brief to a new argument raised by appellee."); *Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) ("Yet because Webb did not respond to this point in his reply brief, he waived any counterarguments he could have raised.").

However, even if Plaintiff had not waived this argument, and even if Plaintiff had submitted the curriculum evidence in support of criterion five, and *even if* the court were to find Defendant's failure to consider it error, such error would be harmless. In

circumstances where an agency errs, the court may evaluate whether such an error was harmless. *Kazarian*, 596 F.3d at 1118. In the context of agency review, the harmless error doctrine may be employed only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached, and the court will not usually overturn agency action unless there is a showing of prejudice to the petitioner. *Kazarian*, 596 F.3d at 1119.

For purposes of argument, the court will assume that the curriculum developed by Plaintiff was original. But Plaintiff's contribution must be *both* original *and* significant. See *Venkatnarayan v. Jaddou*, 2024 WL 4008312, at *7 n.7 (M.D.N.C. Aug. 30, 2024). Plaintiff may have developed the curriculum for use at CICOM, but the portion of the record cited by Plaintiff in support, letters from CICOM's Dr. Mark Cohen and Prof. Michal M. Masternak at the University of Central Florida, do not specifically discuss application of Plaintiff's curriculum at institutions beyond CICOM. Thus, any error on this point was harmless because Plaintiff's cited evidence does not show that anyone beyond his institution used his curriculum. See *Amin*, 24 F.4th at 394; *Karim*, 2023 WL 4624896, at *9 ("With respect to Dr. Morse's letter, USCIS explained that Dr. Morse failed to provide evidence of Plaintiff's impact beyond her employer, clients, or customers. Dr. Motlagh's letter suffered similar deficiencies, according to USCIS. As these explanations highlight, USCIS explained its reasoning as to why the letters were insufficient and allowed Plaintiff the opportunity to supplement the record, which she did not do.").

Second, with regard to Plaintiff's publications, he argues that "the record contained ample corroborating evidence showing [Plaintiff's] work had been put to use in the field, including having been published by the World Health Organization, published in other scholarly journals, Altmetric scores, citation records, and testimonial evidence from multiple experts that attested to how [Plaintiff']s proning procedure constituted a novel treatment for COVID-19."

Defendant responds that, contrary to Plaintiff's assertions, the Decision indicates Defendant did consider Plaintiff's published articles, citation records, and conference participation in its analysis, but simply concluded the submitted evidence was insufficient to establish contributions of major significance in the field. Defendant argues that it determined that Plaintiff's 358 citations were significantly reduced when citations by himself, his coauthors, or other members of his research circle were removed, and that his citation rates were significantly smaller in number and influence than those Plaintiff considers at the top of his field. Defendant stated in the Decision that "[s]elf-citation or citation by other members of the research group does not establish that the contributions of his articles have been of such major significance that they are being discussed, researched, and referenced by the field as a whole." As to participation in conferences, Defendant found that Plaintiff's submitted evidence fell short of establishing contributions of major significance as the "record does not contain any evidence to suggest [Plaintiff's] participation and presentation garnered such support that it has elevated the appearance above other presentations in the field."

27

Again, Plaintiff did not respond to Defendant's argument on this point in his Response and Reply.  However, even were the court to consider Plaintiff's contentions on this point, the court does not find Defendant's Decision to be "arbitrary and capricious" as to the significance of Plaintiff's articles and citation rates.  Defendant did not "ignore" that evidence, but rather addressed it directly and found it to be lacking, sometimes substantially so, when compared against the citation record of those Plaintiff considers at the top of his field.[8]  Though Plaintiff may disagree with Defendant's characterization and weighing of his evidence, Defendant has "articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," thus the court cannot say the Decision was arbitrary and capricious in this regard.[9]  See *Amin*, 24 F.4th at 393 (cleaned up); *Bhanu v. Garland*, 2023 WL 6119357, at *8 (E.D. Pa. Sept. 18, 2023) ("Regarding the citation statistics offered by Dr. Bhanu, USCIS found that Dr. Bhanu 'has not demonstrated that the number of citations received by his published articles reflect a level of interest in his work from relevant parties to meet this criterion.'

---

[8]Defendant noted in the Decision that, by way of comparison to Plaintiff's 358 citations, Atul Malhotra had a citation record of 68,000, Michael Joyner had a citation record of 46,000, Diego Falci a citation record of 4,721, and Tom Wingfield had a citation record of 4,364, all far outpacing Plaintiff's citation records.

[9]Plaintiff appears to, at least partially, acknowledge the weakness of his citation record in his Response and Reply at pages 10-11, where he states that if he "only relied on his citation record," Defendant's statement that there was no evidence of record indicating that his work had been put to use in the greater field as a whole, "would be only partly right[.]"

Given that the evidence on record supports the agency's action, the Court finds no reason to overturn the agency's decision regarding Dr. Bhanu's failure to meet the evidentiary criteria under 8 C.F.R. 204.5(h)(3)(v).").

With respect to Plaintiff's participation in conferences, the Decision's reasoning on this point is certainly brief. But, as noted by Defendant, under the APA, "a reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021). Here, it is clear that Defendant placed little weight on Plaintiff's participation in these conferences because the submitted evidence did not indicate that Plaintiff's participation and presentation at the conferences stood out enough to elevate his participation above other "other presentations in the same field." While Plaintiff was asked to participate in conferences and panels, even moderating some panels, the evidence did not establish that he led panels or presented on such a scale that it would, combined with the other evidence, help Plaintiff satisfy criterion five.

Moreover, Plaintiff himself, in his Motion for Summary Judgment, offers no more detailed argument on this point beyond "his invitations to speak at national conferences about his innovative treatment for COVID-19 ... constituted a major significance to the field of pulmonary care." The burden is on Plaintiff to present the evidence and argument establishing eligibility for the benefit sought by a preponderance of the evidence. See *Smith,* 103 F.4th at 1252. "As the Seventh Circuit has stressed 'perfunctory and undeveloped arguments, as well as arguments that are

29

unsupported by pertinent authority, are waived.'" *Mill Creek County Club, Inc. v.*

*Evergreen Alliance Gold Ltd., LP*, 2023 WL 2843540, at *1 (N.D. Ill. Apr. 7, 2023), quoting

*Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022).

Next, the court finds Plaintiff's argument about the weight (or lack thereof)

placed on his letters in support by Defendant to be similarly unsuccessful. Plaintiff

argues that Defendant "abused its discretion by selectively parsing the testimonial

evidence and discounting testimony because the authors were colleagues or knew

[Plaintiff]." Plaintiff argues that Defendant "arbitrarily discounted testimony on the

basis that the authors had not provided credible information simply because [Plaintiff]

requested the support from his colleagues." Plaintiff argues that Defendant ignored its

own Policy Manual, which states that "Detailed letters from experts in the field

explaining the nature and significance of the person's contribution may also provide

valuable context for evaluating the claimed original contributions of major significance,

particularly when the record includes documentation *corroborating the claimed*

*significance*." (Emphasis added).

Defendant, in response, notes that it did not ignore the above evidence in the

Decision, but rather reviewed the "relevant documents in the record," including

"[s]everal letters of recommendation from peers and colleagues[.]" Defendant argues

that Dr. Thameem's letter provided conclusory statements as to Plaintiff's work for

Carle and CICOM, and the Decision concluded that the letters from Drs. Thameem and

Stanic, "as well as other colleagues," did not "illustrate how the self-petitioner's

30

contributions are both original and of major significance in the overall field."

Defendant acknowledged that the letters indicated Plaintiff's work had benefitted his

direct employer, Carle, but they did not indicate that his work had been put to use in

the greater field as a whole.

Plaintiff, again, fails to address Defendant's arguments on this point in his

Response and Reply, so he has waived them.  But even so, Defendant is correct.  As an

initial point, it was not arbitrary and capricious for Defendant to find that "the

submission of the solicited letters supporting the petition was not presumptive evidence

of eligibility."  See *Yasar v. Department of Homeland Security*, 2006 WL 778623, at *11 (S.D.

Tex. Mar. 24, 2006) ("The Court has reviewed the letters of recommendation presented

by Yasar and agrees that, although Yasar's contribution was clearly important to the

projects undertaken by his employers, there is no evidence that Yasar's contributions

had the requisite significance outside of these ventures in the field of business

intelligence."); *Viswanadha*, 660 F.Supp.3d at 775-76.

Setting aside the letter from Dr. Sharma, which the court will address below, the

Decision clearly *does* consider and address the letters of Drs. Thameem and Stanic "as

well as other colleagues[.]"  Plaintiff properly cites the Policy Manual on the acceptance

of letters from peers and experts in the field, but there is nothing in the Policy Manual,

at least not cited by Plaintiff, that requires Defendant to accept conclusory statements

from Plaintiff's colleagues about his contributions at face value, or to credit letters that

demonstrate Plaintiff's significant contributions to his place of employment, but do not

31

evidence Plaintiff's work being significant *in the greater field as a whole*.  See *Bhanu*, 2023

WL 6119357, at *8 ("The Court agrees that USCIS had the authority to find the letters

insufficient, and that not addressing each, one by one, in its denial, the Agency was

within its rights to discount as conclusory and/or insubstantial the evidence proffered

... and to insist on a more substantial showing." (cleaned up)).

Indeed, the Policy Manual specifically contemplates that the letters will be of

value "when the record includes documentation *corroborating the claimed significance*" of

the contribution to the field in general.  (Emphasis added).  But that objective

"corroborating evidence" is exactly what Defendant found was lacking in this case.  The

Decision specifically notes that Defendant placed less weight on the letters because they

were solicited purely for purposes of the petition, and that "[e]vidence in existence *prior*

to the preparation of the petition carries greater weight than new materials prepared

especially for submission with the petition[.]"  It was not arbitrary and capricious for

Defendant to accord greater weight to "objective" evidence (evidence in existence

before prior to the preparation of the petition) than to evidence prepared especially for

submission with the petition, because, as Defendant stated in the Decision, "an

individual with sustained national or international acclaim should be able to produce

unsolicited materials reflecting that acclaim."  See *IK School of Gymnastics v. Nielson*, 2018

WL 5312190, at *5-6 (D.D.C. Oct. 26, 2018) (upholding agency decision finding letters

unpersuasive as to evidence of the petitioner's participation as a gymnastics

competition judge without specific information as to the petitioner's role and other

corroborating evidence); *Bhanu*, 2023 WL 6119357, at *8 (upholding USCIS decision requiring objective evidence in addition to letters of support to satisfy criterion five).  In other words, Defendant, in line with the Policy Manual, considered the letters, but attributed less weight to them when the record did not contain objective documentation corroborating their claims of major significance.

In short, Defendant did give some weight to the letters—just not the weight Plaintiff would prefer.  See *Bhanu*, 2023 WL 6119357, at *8.  In these circumstances, the court cannot conclude that Defendant's decision was arbitrary.  See *Bhanu*, 2023 WL 6119357, at *8, citing *Visinscaia v. Beers*, 4 F.Supp.3d 126, 135 (D.D.C. 2013) (holding agency decision not arbitrary or capricious where denial of criterion five was based on references letters' lack of specifics showing major significance of contributions).

Finally, Plaintiff argues that Defendant "entirely ignored" Dr. Sharma's letter "regarding the innovative and widely adopted proning procedure [Plaintiff] developed to treat COVID-19, a procedure which offered patients significantly improved outcomes at a time when doctors across the world were looking for novel solutions to combat COVID-19."  Dr. Sharma stated that Plaintiff's published paper on the protocol at the beginning of the pandemic "was extremely vital work" and still holds relevance today.  Plaintiff argues that Defendant "summarized other letters" he submitted "but arbitrarily and capriciously ignored Dr. Sharma's testimony."

Defendant first argues that it is not required to separately address each piece of evidence. Defendant argues it considered letters beyond the specific ones mentioned, but any alleged failure to consider Sharma's letter was harmless. Defendant then contends that Plaintiff overstates the importance of the Sharma letter, noting that Dr. Thameem's letter with similar information was clearly considered by Defendant and ultimately rendered Sharma's letter duplicative.[10] Finally, Defendant argues that the Sharma letter actually undermines the originality argument, as it repeatedly refers to Plaintiff's proning protocol as "one of the first," not simply "the first."

Plaintiff notes that Dr. Sharma's letter discussed the significant impact Plaintiff's proning protocol had on the treatment of COVID-19, and that Plaintiff's contribution "significantly impacted scientific medicine, informed other medical researchers, and influenced healthcare systems in treating COVID-19 patients during a global pandemic." Plaintiff reiterates that Dr. Sharma's letter, "which Defendant concedes was not mentioned in the final decision, contradicts [Defendant's] finding that there was no evidence of record indicating that [Plaintiff's] work 'has been put to use in the greater field as a whole.'"

Defendant replies that Dr. Sharma's letter contains "no evidence or citation to show this worldwide adoption" of Plaintiff's proning protocol, and that it is "not required to give unsubstantiated statements any weight."

---

[10]Defendant argues Thameem's letter contains much of the same information as Sharma's letter and is actually more specific as it relates to the proning protocol (citing to Plaintiff's publication and how the protocol in question had been used in intubated patients but not non-intubated patients).

34

The court would first note that Defendant does not need to *explicitly* address every letter it receives in support of a petitioner's application for an EB-1 visa. See *Karim*, 2023 WL 4624896, at *8 ("First, the Court rejects Plaintiff's implied assertion that USCIS must explicitly consider every letter she submitted. She points to no case law—ostensibly because none exists—requiring USCIS to explicitly address every letter."); *Tumi, Inc. v. Higgins*, 2025 WL 1795317, at *7 (D. Vt. Feb. 7, 2025) ("In this case, the record demonstrates that USCIS gave reasoned consideration to the testimonial letters in its analysis of the 'original contributions' criterion, and the court will not therefore require that it individually address each of the letters."); *Martinez v. Immigration and Naturalization Service*, 970 F.2d 973, 976 (1st Cir. 1992) ("Where, as here, the Board has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented").

Still, "'[w]hile [USCIS] is not required to address every piece of evidence the petitioner presents, they must still make an adequate finding based on a reasoned consideration of the record.'" *Tumi, Inc.*, 2025 WL 1795317, at *7, quoting *Golani v. Allen*, 2023 WL 4874767, at *9 (E.D. Mich. July 31, 2023) (cleaned up). Plaintiff is correct that a "*[t]otal* failure to consider important evidence is a basis for setting aside agency action." *Amin*, 24 F.4th at 394 (emphasis added). But while Defendant did not explicitly discuss Dr. Sharma's letter, Defendant did state that it considered "several letters of recommendation from peers and colleagues," including Drs. Thameem and Stanic.

Defendant also stated Plaintiff submitted letters from "those named above" (presumably Thameem and Stanic) "as well as other colleagues," which may include Dr. Sharma's letter.

However, even if Defendant did not consider Dr. Sharma's letter, and, assuming arguendo that its failure was error, such error was harmless. As will be explained below, the letter fails to provide objective evidence that Plaintiff's proning protocol constituted an original and significant contribution to the field of pulmonary medicine as a whole. See *Nelson v. U.S. Citizenship and Immigration Services*, 2022 WL 20583561, at *8 (D. Mass. June 15, 2022) ("Assuming arguendo that USCIS's disregard of the affidavits was improper, it nevertheless constituted harmless error for the reasons already explained, namely that the affidavits fail to provide objective evidence of Nelson's impact on the field as a whole.").

First, as noted by Defendant, Dr. Sharma's letter is somewhat duplicative of Dr. Thameem's, which Defendant explicitly considered. Both letters discuss how the proning protocol was innovative and make general statements as to its significance in treating patients with COVID-19. However, some statements in Dr. Sharma's letter could be read, to a certain extent, to undermine the originality of Plaintiff's contribution via qualifying language. Dr. Sharma refers Plaintiff authoring "one of the first papers on proning non-intubated patients[,]" and that Plaintiff's "research was one of the first studies available related to this concept in 2020."

36

Like Dr. Thameem's letter, Dr. Sharma's letter is full of conclusory, unsupported assertions as to the significance of Plaintiff's proning protocol.  Despite the high praise from Dr. Sharma for Plaintiff, the letter lacks any citation to corroborating or objective evidence demonstrating the significance of Plaintiff's proning protocol to the field as a whole.  As stated above, Defendant's weighing of objective, pre-submission evidence above solicited, subjective letters is not unreasonable.  See *IK School of Gymnastics*, 2018 WL 5312190, at *5-6; *Bhanu*, 2023 WL 6119357, at *8.[11]

Dr. Sharma repeatedly asserted that Plaintiff's contribution was "invaluable," that "health care systems beyond his own employer (Carle) relied on the finding[,]" and that Plaintiff's contribution was of "substantial importance to the field," but the letter contains no citation or objective evidence for these assertions.[12]  Testimonials consisting mostly of conclusory statements about the significance of a petitioner's work that speak largely in generalities but do not provide specific evidence as to how the practitioner impacted the field do not satisfy criterion five.  See *Jafarov*, 2024 WL 69056, at *8.  That

[11]While "[n]othing in 8 C.F.R. § 204.5 suggests that an alien's evidence *must* be 'objective,'" *Branski v. Seng*, 2024 WL 4678939, at *5 (E.D. Wis. Nov. 4, 2024) (emphasis added), Defendant may certainly give more weight to objective evidence than subjective when making its determinations.  See *Nelson*, 2022 WL 20583561, at *7-8.

[12]Dr. Sharma, in his letter, stated that "[a]nother prominent ICU physician at the University of Texas Health Science Center in Houston and I also shared ideas with [Plaintiff] when we created our proning protocols for COVID-19 patients," but this one piece of anecdotal evidence does not necessarily satisfy the requirements necessary to establish a significant contribution to the field.  Moreover, the wording is slightly confusing, and can be read to possibly undermine Plaintiff's claim to originality if Dr. Sharma is saying he and this other physician influenced Plaintiff in the development of his proning protocol, or that all three of them shared ideas in the concurrent development of their proning protocols.

Plaintiff may disagree—or that another rational decisonmaker may have determined that he did satisfy this criterion—does not provide a basis for the court to overturn Defendant's reasoned decision to the contrary. See *Jafarov*, 2024 WL 69056, at *8.

Plaintiff's reliance on the district court's decision in *Buletini v. Immigration and Naturalization Service*, 860 F.Supp.2d 1222 (N.D. Ill. 1994), is misplaced. In that case, when attempting to satisfy criterion five, the petitioner presented as evidence: his book on the history of public health; a German–Albanian medical dictionary he authored; his study regarding dispensary facilities in "Zeri I Popullit," the largest circulation newspaper in Albania; his receipt of the Medal for Good Service in relation to his work on the history of public health, which "clearly was recognized within Albania as being a scholarly work of major significance"; evidence regarding the value of the petitioner's other scholarly contributions to the medical field; and a letter of reference signed by both the Director of the Korce Hospital and the Chief of the Health Department of Korce, stating that the petitioner's work with respect to the dispensary facilities "was of national importance." As to his dictionary, the petitioner submitted a letter of reference from the President of the American Academy of Industrial Hygiene, stating that the dictionary was "an original work that will provide invaluable assistance to all persons who write or translate from the German language, and that the extensive bibliography of the dictionary encompasses all fields of medicine and has practical value which fills a void in the medical profession."

38

The petitioner also presented a letter from the Foreign Language Coordinator of the Ferndale Public Schools, stating that the dictionary was a "major scholarly work" and a "significant practical contribution to scientific education and research." *Buletini*, 860 F.Supp. at 1232-33.

The agency ignored *all* of the above evidence, considering only articles the petitioner presented before his colleagues at Korce Hospital. *Buletini*, 860 F.Supp. at 1232. Nowhere in the agency's decision was there any discussion of the petitioner's book on the history of public health, his creation of a medical dictionary, or of his work with regard to dispensary facilities. *Buletini*, 860 F.Supp. at 1233. The court found that the agency's "failure to consider all of the relevant evidence submitted" constituted "an abuse of discretion[,]" as it "clearly demonstrate[d] that [the petitioner] has authored original scientific work of major significance in his field." *Buletini*, 860 F.Supp. at 1233.

In contrast, Defendant here considered all of the relevant evidence submitted by Plaintiff and, even if Defendant did not consider Dr. Sharma's letter, and such failure was error, it was harmless error for the reasons already discussed. Defendant's consideration of the evidence was far more thorough and complete than the near total failure described in *Buletini*.[13]

---

[13]Conversely, as noted by another court when discussing *Buletini*, that case "merely presents an alternative interpretation that may also have support in law. This is not enough to show that the agency's decision, supported by law and substantial evidence, is arbitrary, capricious, or contrary to law." *Integrity Gymnastics & Pure Power Cheerleading, LLC v. United States Citizenship and Immigration Services*, 131 F.Supp.3d 721, 733 n.3 (S.D. Ohio 2015).

A decision "is unsupported by substantial evidence when the record lacks evidence that a reasonable mind might accept as adequate to support the conclusion." *Viswanadha*, 660 F.Supp.3d at 775.  The lack of objective, corroborating evidence informed Defendant's Decision with respect to the submitted letters as a whole. Defendant came to a reasonable conclusion when it discounted the letters submitted on behalf of Plaintiff and found that they did not establish he had made an original contribution of major significance.  See *Viswanadha*, 660 F.Supp.3d at 775.  A reasonable mind could find that, while the letters may have supported Plaintiff making a contribution to the treatment of non-intubated COVID-19 patients at Carle (and possibly Dr. Sharma's institution), they did not indicate he made a substantial contribution to the broader field of pulmonary medicine.  See *Viswanadha*, 660 F.Supp.3d at 775.[14]

In any event, Defendant specifically noted that it had considered all of the submitted relevant evidence and nevertheless rejected Plaintiff's application, concluding that Plaintiff had not shown, by a preponderance of the evidence, that he had made original contributions of major significance in the field.  See *Nelson*, 2022 WL 20583561, at *8 ("...USCIS did not act arbitrarily in concluding that such documentation,

---

[14]Plaintiff argues Defendant "conflated the first step with the merits stage of the analysis, which is preserved for the second stage[,]" by "misstating and discounting the testimonial evidence supporting [Plaintiff's] assertion that he made an original contribution of major significance[.]" However, assuming arguendo that Defendant did conflate the steps and that this was error, it was harmless, because Defendant did conduct a final merits determination and ultimately found that Plaintiff did not meet his burden for the EB-1 visa.  See *Rijal v. United States Citizenship and Immigration Services*, 772 F.Supp.2d 1339, 1347-48 (W.D. Wash. 2011).

without more, failed to establish the type of widespread acclaim that the regulation demands even in the context of the entire record.").  "A holistic review of the evidence" reveals that Plaintiff's submissions are insufficient to carry his burden, as "the individual submissions suffer from the problems noted and, collectively, point to no different conclusion when considered individually."  See *Nelson*, 2022 WL 20583561, at *8.  "Thus, there is no support for a finding that the agency failed to consider the evidence before it, whether individually or collectively."  *Venkatnarayan*, 2024 WL 4008312, at *9.

Defendant's analysis on Plaintiff's failure to meet criterion five is consistent with the relevant regulatory language, and its determination that Plaintiff did not submit material that met the regulatory definition of evidence set forth in criterion five "is neither arbitrary, capricious, nor an abuse of discretion."  See *Kazarian*, 596 F.3d at 1122.

The Second Step: Final Merits Determination

Even if an EB-1 "petitioner can satisfy three of the ten criteria, the petition is still subject to Step Two of the process: a 'final merits' determination by the USCIS."  *Nelson*, 2022 WL 20583561, at *10, citing *Kazarian*, 596 F.3d at 1119-20.  "At stage two, USCIS '[e]valuate[s] all the evidence together' to assess whether the petitioner possesses 'the high level of expertise required for this immigrant classification.'"  *Nelson*, 2022 WL 20583561, at *10, quoting Policy Manual Chapter 2 – Extraordinary Ability, U.S. Citizenship and Immigration Services.

41

Plaintiff argues that Defendant's final merits determination was arbitrary and capricious because it "offered nothing more than a boilerplate assessment of the evidence after finding [Plaintiff] provided initial evidence of his extraordinary ability." Defendant's boilerplate analysis, Plaintiff argues, violated Defendant's own Policy Manual's requirement that it "articulate the specific reasons as to why the officer concluded that the petitioner has not demonstrated by a preponderance of the evidence that the person has an extraordinary ability." Plaintiff argues that the specific evidence "directly refuted" Defendant's conclusion. Plaintiff cites to: his work being disseminated at various conferences; the fact he has been "credited with creating multiple treatments for pulmonary care"; his recognition as a distinguished fellow by the ACCP; and his published work and widespread acclaim for the proning protocol.

Defendant responds that, contrary to Plaintiff's assertions, the Decision explained that Plaintiff's evidence was insufficient to demonstrate three aspects of the extraordinary ability test: (1) a level of expertise indicating that Plaintiff was one of the small percentage who have risen to the very top of his field of endeavor; (2) sustained national or international acclaim; and (3) extensive documentation to show that his achievements had been recognized in the field of expertise. Defendant argues that it provided specific reasons as to each of the three aspects of the extraordinary ability test it found insufficient.

In his Response and Reply, Plaintiff argues that Defendant ignored Dr. Sharma's letter, which was arbitrary and capricious, as it meant Defendant was either ignoring or misstating the evidence. Plaintiff argues Defendant made no attempt to explain why his evidence did not meet the acclaim and recognition standard.

At the second step, Plaintiff has to demonstrate not just that he is accomplished in the field of pulmonary medicine, but also that (1) he is one of a small percentage who have risen to the very top of his field, (2) he has sustained national or international acclaim over time, and (3) his achievements have been recognized in the field of pulmonary medicine through extensive documentation. See *Hamal*, 2023 WL 1156801, at *2, citing 8 C.F.R. § 204.5(h)(2)-(3); 8 U.S.C. § 1153(b)(1)(A); *Bhanu*, 2023 WL 6119357, at *9 ("Under the second step, USCIS evaluates whether, considering the totality of the evidence, the petitioner is at the very top of the field of endeavor.").

The Decision in the instant case found that, considering all of the evidence submitted, while Plaintiff had met three of the regulatory criteria, "the evidence [did] not sufficiently demonstrate that he is in the small percentage at the top of the field or show the sustained national or international acclaim required for this highly restrictive classification. Nor [did] the record include extensive documentation showing recognition of the self-petitioner's achievements in the field." As discussed at pages 13 through 16 of this Order, the Decision spelled out how Plaintiff's submissions were bereft of evidence indicating that his work was employed in significant ways beyond entities with which he was affiliated, or that his work "attracted an usually high level of

interest in the field[.]"  The Decision acknowledged the letters submitted on Plaintiff's behalf reflected that he was respected and had enjoyed a successful career, but that, ultimately, the letters represented uncorroborated assertions and opinions.  The record, Defendant found, "does not include extensive documentation showing [Plaintiff's] professional achievements have already been recognized in the field of expertise, and that he already reached a level of expertise indicating that he is one of the small percentage who have risen to the very top of the field of endeavor."

For all the reasons discussed in the prior section on criterion five, Defendant's determination on the final merits was not arbitrary or capricious.  The court need not restate its previous analysis from criterion five, but Defendant was well within its rights to conclude, based on the evidence submitted (including the letters in support), that Plaintiff's proning protocol and CICOM curriculum, while valuable contributions to the field, did not lead to sustained national or international acclaim or indicate that he was one of the small percentage who had risen to the *very top* of the field of pulmonary medicine.  Defendant's finding that the record before it lacked objective, pre-petition evidence demonstrating Plaintiff's extraordinary ability, and its decision to place less weight on subjective, solicited letters in support was rational, and the path to Defendant's decision was "reasonably discernible" based on that evidence (or the lack thereof).  See *Teacher v. Meink*, 2026 WL 252553, at *9 (D. Md. Jan. 30, 2026); *Nagaiah v. Allen*, 784 F.Supp.3d 798, 820-21 (E.D. Pa. 2025) (upholding final merits decision denying EB-1 visa where USCIS found, in part, that the petitioner did not provide

44

"objective documentary evidence" to show that his work led to sustained national or international acclaim).

While the Plaintiff may disagree with Defendant's conclusions, this does not mean that the conclusions were arbitrary, capricious, or unsupported by substantial evidence. See *Viswanadha*, 660 F.Supp.3d at 780.[15] Rather, as shown above, Defendant conducted a thorough analysis, considered the relevant factors, and reached a reasonable conclusion. See *Viswanadha*, 660 F.Supp.3d at 780. Though a review of the evidentiary submission reveals that Plaintiff is a successful professional, success alone is not enough. See *Nelson*, 2022 WL 20583561, at *10. "Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call." *Amin*, 24 F.4th at 394-95. Plaintiff has not pointed to evidence in the record distinguishing him from the merely successful and qualifying him as *extraordinary*. See *Nelson*, 2022 WL 20583561, at *10. Of course, to prevail, he must not only point to such evidence, but he must also establish that the differing conclusion reached by Defendant was arbitrary and capricious. See *Nelson*, 2022 WL 20583561, at *10.

After evaluating the evidence, Defendant reached "the familiar conclusion" that

---

[15]The court finds *Muni v. Immigration and Naturalization Service*, 891 F.Supp. 440 (N.D. Ill. 1995), cited by Plaintiff, to be distinguishable. In that case the agency, as Defendant did here, found the petitioner satisfied three of the step one criteria but concluded the petitioner did not sustain national or international acclaim. The court reversed, finding that the agency misapplied its own definition of extraordinary ability, completely ignored affidavits in support, discounted a raft of objective evidence (key player on Stanley Cup championship teams, articles, and awards) and "made no attempt to explain why [the plaintiff's] evidence did not meet the acclaim and recognition standard." *Muni*, 891 F.Supp. at 444-46. For reasons already explained, no such deficiency exists in this case.

Plaintiff does not qualify as a foreign national with extraordinary ability.  See *Nagaiah*, 784 F.Supp.3d at 821, citing *Joseph*, 2025 WL 458001, at *4.  Viewed altogether, Defendant's decision to deny Plaintiff's petition at the final merits determination "had a rational connection between the facts found and the choice made."  See *Bhanu*, 2023 WL 6119357, at *9 (cleaned up).  Accordingly, even though Plaintiff is a skilled pulmonary medicine specialist who has produced valuable work in the form of the proning protocol and CICOM engineering-based curriculum, that is not the same as being internationally recognized as outstanding under the statute and the court must uphold Defendant's reasonable decision to deny Plaintiff's petition. See *Viswanadha*, 660 F.Supp.3d at 780, citing *Boucher v. United States Department of Agriculture*, 934 F.3d 530, 547 (7th Cir. 2019) (when considering if an agency's decision was arbitrary or capricious, a court must uphold the action if the agency considered all the relevant factors and the court can discern a rational basis for the agency's choice); *Mishra v. Richardson*, 2021 WL 1566071, *5 (E.D. Va. April 20, 2021) (finding that USCIS's "evaluation of the expert letters was clearly rational and within its discretion to decide how much weight to give the letters," and ultimately holding that while "the record shows that plaintiff is a talented and well respected business analyst within his circle ... the record does not show that plaintiff has received the national or international acclaim for his work that is required in order for such a unique visa to be awarded").

46

Thus, Defendant's decision was not arbitrary and capricious, and so the court grants Defendant's Motion for Summary Judgment on Counts I and II of Plaintiff's Amended Complaint.  Consequently, Plaintiff's Motion is DENIED.

IT IS THEREFORE ORDERED:

(1)    Defendant's Motion for Summary Judgment (#16) is GRANTED in full.

Plaintiff's Motion for Summary Judgment (#11) is DENIED.  Judgment is

entered in favor of Defendant and against Plaintiff.

(2)    This case is terminated.

ENTERED this 28th day of May, 2026.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE